## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN CRANDLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     CIVIL ACTION NO. 3:2006-51 |
| | ) |
| JO ANNE B. BARNHART, | )     JUDGE GIBSON |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 8-11). The Court has jurisdiction of this matter pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Court will deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 8) and grant the Motion for Summary Judgment filed by the Commissioner (Document No. 10).

Karen M. Crandle ("Plaintiff") protectively filed for disability insurance benefits under Title II of the Social Security Act on May 28, 2004, alleging disability as of April 2, 2004. R. p. 14. The claim was initially denied on September 30, 2004, prompting the Plaintiff to file a timely request for a hearing on October 13, 2004. *Id.* A hearing was held in Johnstown, Pennsylvania, on September 22, 2005, before Administrative Law Judge Patricia C. Henry ("ALJ"). R. p. 269. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 273-293. Dr. Morton Morris, an

1

impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 293-301.

On October 3, 2005, the ALJ issued a decision which was unfavorable to the Plaintiff. R. pp. 14-23. The Appeals Council denied the Plaintiff's request for review on December 30, 2005, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. pp. 6-8. The Plaintiff filed a complaint in this matter on March 1, 2006. Document No. 1. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"), filed an answer on April 25, 2006. Document No. 4. The Plaintiff and the Commissioner filed cross-motions for summary judgment on June 26, 2006, and July 26, 2006, respectively. Document Nos. 8 & 10.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. *See id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for

2

substantial evidence is thus a qualitative exercise without which our review of social
security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and

deference must be given to the Commissioner's findings unless there is an absence of substantial

evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185,

1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability

Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a

five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step

process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not
> review the claim further. At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful activity." §§
> 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the
> claimant shows that he has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the claimant's] physical or
> mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three,
> the agency determines whether the impairment which enabled the claimant to survive
> step two is on the list of impairments presumed severe enough to render one disabled;
> if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is
> not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the
> claimant can do his previous work; unless he shows that he cannot, he is determined not
> to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires
> the SSA to consider so-called "vocational factors" (the claimant's age, education, and
> past work experience), and to determine whether the claimant is capable of performing
> other jobs existing in significant numbers in the national economy. §§ 404.1520(f),
> 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003)

(footnotes omitted; brackets in original).

3

In her decision, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. p. 16. At the second step of the sequential evaluation process, the ALJ found the Plaintiff to be suffering from myotonic dystrophy, obstructive sleep apnea, and narcolepsy. *Id.* These impairments were deemed to be "severe" for purposes of 20 C.F.R. § 404.1520(a)(4)(ii). *Id.* The ALJ concluded that the Plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. p. 18. In accordance with 20 C.F.R. § 404.1545, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

Upon careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform work at the light exertional level but is limited to occasional balancing, stooping, kneeling, crouching, crawling and climbing, is limited to occasional fine fingering and gross handling, must avoid driving, and is limited to simple, routine and repetitive tasks not performed in a production or quota-based environment involving only simple, work-related decisions and, in general, relatively few work place changes.

R. p. 18. Moving on to the fourth step of the process, the ALJ determined that the Plaintiff could not return to any of her past relevant work as a phlebotomist, certified nurse's aide, or sales clerk. R. p. 21.

At the time of her alleged onset of disability, the Plaintiff was forty-two years old.[1] *Id.* On the date of the ALJ's decision, the Plaintiff was forty-four years old and had a high school education.[2] *Id.* R. p. 274. Based on the applicable residual functional capacity and vocational assessments, the ALJ concluded that the Plaintiff could work as a ticket taker, an envelope sorter, an injection mold press

---

[1]Although the ALJ's decision actually lists this age as thirty-two, this was a result of an obvious mathematical error. R. p. 21. The Plaintiff was born on July 31, 1961. *Id.* The ALJ's mathematical calculation was off by ten years.

[2]At the hearing, the Plaintiff testified that she had attended Greater Johnstown Votech to be trained as a nursing assistant and Cambria County Community College to be trained in phlebotomy. R. p. 274.

4

operator, or a bench assembler. R. pp. 21-22. Dr. Morris' testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 293-301.

Before moving on to address the specific arguments raised by the Plaintiff, the Court must address a preliminary matter which she appears to overlook. In her brief, the Plaintiff calls the Court's attention to letters written by Dr. Paula R. Clemens and Dr. Samuel Massoud. Document No. 9 p. 14. Dr. Clemens' letter, which was dated October 6, 2005, explained that the Plaintiff suffered from myotonic muscular dystrophy, which was due to a genetic mutation and caused "cardiac and endocrine abnormalities, cataracts, degeneration of muscle and difficulty in relaxing muscles after a contraction." R. p. 267. Dr. Clemens went on to state that the Plaintiff's fatigue and hypersomnolence (increased sleepiness and need for sleep) were clinically described symptoms of the disorder, and that these "chronic and progressive" symptoms did not typically respond well to medical treatment. *Id.* Dr. Massoud's letter was dated October 17, 2005. R. p. 268. In that letter, Dr. Massoud stated that the Plaintiff's "weakness" was secondary to myotonic muscular dystrophy, and that he did not believe that the Plaintiff could "engage in normal employment to sustain herself." R. p. 268. He made it clear that this opinion was given with "reasonable medical certainty." *Id.* These letters were not before the ALJ at the time of her decision, but they were submitted to the Appeals Council with the Plaintiff's request for review. R. p. 9.

It is not clear to what extent the Plaintiff purports to rely on these letters in her action in this Court under 42 U.S.C. § 405(g), but it is clear that they cannot be considered in the inquiry as to whether the Commissioner's decision is "supported by substantial evidence." As the Commissioner points out, "[a] reviewing court can only look at the evidence that was actually presented to the ALJ in

5

determining whether the ALJ's decision is supported by substantial evidence." Document No. 11 p. 8. The position taken by the Commissioner is based on the decision of the U.S. Court of Appeals for the Third Circuit in *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001). In *Matthews*, the Court of Appeals construed the sixth sentence of 42 U.S.C. § 405(g) to preclude consideration of such evidence by the District Court absent a showing of good cause on the part of the claimant as to why the evidence was not initially presented to the ALJ.[3] *Matthews*, 239 F.3d at 592-593. While the Courts of Appeals are divided on the question of whether evidence of this kind can be considered at this stage, this Court is bound by the precedent set in *Matthews*.[4] Even though "evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court in making its substantial evidence review once the Appeals Council has denied review." *Id.* at 593. This

---

[3]The sixth sentence of 42 U.S.C. § 405(g) states as follows: "The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based."

[4]Compare *Higginbotham v. Barnhart*, 405 F. 3d 332, 336-337 (5th Cir. 2005), *Perez v. Chater*, 77 F. 3d 41, 45 (2nd Cir. 1996), *O'Dell v. Shalala*, 44 F. 3d 855, 859 (10th Cir. 1994), *Ramirez v. Shalala*, 8 F. 3d 1449, 1452 (9th Cir. 1993), *Nelson v. Sullivan*, 966 F. 2d 363, 366 (8th Cir. 1992), and *Wilkins v. Secretary of DHHS*, 953 F. 2d 93, 96 (4th Cir. 1991) (en banc), (holding that evidence not submitted to the ALJ but later submitted to the Appeals Council, which later denies review, should be considered by the District Court), with *Matthews v. Apfel*, 239 F. 3d 589, 593-594 (3rd Cir. 2001), *Falge v. Apfel*, 150 F. 3d 1320, 1322-1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124, 142 L. Ed. 2d 905, 119 S. Ct. 907 (1999), *Cotton v. Sullivan*, 2 F. 3d 692, 695-696 (6th Cir. 1993), and *Eads v. Secretary of DHHS*, 983 F. 2d 815, 817-818 (7th Cir. 1993), (holding that evidence not presented to the ALJ but later submitted to the Appeals Council, which later denies review, should not be considered by the District Court unless the claimant shows good cause for not having submitted the evidence to the ALJ). See also *Mills v. Apfel*, 244 F. 3d 1, 4-6 (1st Cir. 2001), (holding that an ALJ cannot be faulted for failing to consider unavailable evidence, but that "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for its action.").

exclusionary rule is inapplicable where the Appeals Council accepts the case for review and makes "a decision on the merits, based on all the evidence before it, which then becomes the decision reviewed in the courts." *Id.* at 593, quoting *Eads v. Secretary of DHHS*, 983 F.2d 815, 817 (7th Cir. 1993).

In the instant case, the Plaintiff's request for review was denied by the Appeals Council. R. pp. 6-8. Therefore, the ALJ's decision became the final decision of the Commissioner in this case. R. p. 6. Since that decision was made by the ALJ without the letters written by Dr. Clemens and Dr. Massoud, these letters cannot be considered by the Court in determining whether the decision of the Commissioner is "supported by substantial evidence." The Plaintiff makes no argument as to whether she had "good cause" for not obtaining this evidence prior to the ALJ's decision. Document No. 9, p. 14. Consequently, any argument that she may have had with respect to the "good cause" exception recognized in *Matthews* has been waived.

In support of her motion for summary judgment, the Plaintiff makes three distinct arguments. First, she contends that the ALJ failed to consider all of her impairments in combination in determining her residual functional capacity. Document No. 9 p. 20. Second, she argues that the ALJ failed to properly evaluate the effect that her sleeping difficulties had on her ability to work. *Id.* at 20-21. Third, she asserts that Dr. Morris' testimony was defective because the ALJ omitted certain limitations from her hypothetical questions. *Id.* at 21. The Court will proceed to address each argument in turn.

In her first argument, the Plaintiff contends that the ALJ failed to consider her restrictive lung disease, periodic limb movement and cystitis. *Id.* at 20. The record contains brief references to each of these three conditions. R. pp. 116, 142, 146. Nonetheless, the Plaintiff placed no emphasis on these conditions at the hearing. A close examination of the transcript reveals that the Plaintiff's counsel

7

stated that the Plaintiff had "three rather serious problems[.]" R. p. 300. These problems were myotonic dystrophy, sleep apnea and narcolepsy. R. pp. 287-288. Neither the Plaintiff nor her attorney called the ALJ's attention to restrictive lung disease, periodic limb movement or cystitis.[5]

Under these circumstances, the Plaintiff cannot obtain a remand solely on the basis of the ALJ's failure to mention these three impairments. "Although the ALJ must consider all of the impairments the claimant alleges in determining whether the claimant is disabled, the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant." *East v. Barnhart*, 2006 U.S. App. LEXIS 24737, at *7, 2006 WL 2808242 (11th Cir.)(citation omitted). Under the Social Security Act, the Plaintiff had an obligation to furnish evidence of her impairments to the ALJ. 42 U.S.C. § 423(d)(5)(A). At the second step of the sequential evaluation process, the burden was on the Plaintiff. *Allen v. Barnhart*, 417 F.3d 396, 401, n. 2 (3d Cir. 2005); *Sykes v. Apfel*, 228 F.3d 259, 262-263 (3d Cir. 2000). Having failed to identify these three impairments at the administrative level, the Plaintiff cannot now complain that they were ignored by the ALJ.[6] In truth, they were ignored by the ALJ because they were ignored by the

---

[5]The Court does not mean to suggest that the Plaintiff's attorney did an inadequate job in preparing her case. His failure to mention these impairments reflects the irrelevance of the impairments rather than the incompetence of the attorney. The Court points this out only to illustrate why the Plaintiff cannot fault the ALJ for failing to address these alleged impairments.

[6]In *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), the U.S. Supreme Court held that a claimant need not raise specific issues in his or her request for Appeals Council review in order to raise those issues in court in an action brought pursuant to 42 U.S.C. § 405(g). The Supreme Court did not address the question of whether a claimant must exhaust issues before the ALJ in order to raise them in court. *Sims*, 530 U.S. at 107, 120 S.Ct. at 2083-2084, 147 L.Ed.2d at 86. Justice Breyer, who authored a dissenting opinion joined by Chief Justice Rehnquist and Justices Scalia and Kennedy, assumed that a claimant was required to exhaust issues before the ALJ prior to raising them in federal court. *Sims*, 530 U.S. at 117, 120 S.Ct. at 2089, 147 L.Ed.2d at 92 (Breyer, J., dissenting). In the instant case, the Court need not confront this issue, nor need it decide whether the failure of a claimant to mention a specific impairment at a Social Security disability hearing is properly characterized as a question of "issue exhaustion." The Plaintiff's failure to mention these impairments during the administrative proceedings suggests that they did not result in functional limitations. Even at this

8

Plaintiff herself.

The Court acknowledges, of course, that the ALJ was obligated to consider the combined effect

of all relevant impairments in determining the Plaintiff's residual functional capacity. *Burnam v.*

*Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). As the Commissioner points out, however, the Plaintiff

"cannot point to any medical source opinion which indicates any functional limitation beyond those

found by the ALJ." Document No. 11 p. 11. "Residual functional capacity is defined as that which an

individual is still able to do despite the *limitations* caused by his or her *impairments*." *Pearson v.*

*Barnhart*, 380 F.Supp.2d 496, 505 (D.N.J. 2005)(emphasis added). Impairments which do not result

in functional limitations are irrelevant to the inquiry. The U.S. District Court for the District of Maine

recently commented on this issue in *Tolini v. Barnhart*, 2006 U.S. Dist. LEXIS 71346, 2006 WL

2827660 (D.Me.):

> The problem for the plaintiff is that, even assuming *arguendo* that she suffered from
> medically determinable anxiety and depression impairments as of June 30, 2001, and
> the administrative law judge hence should have included sequelae of any such
> impairments (severe or non-severe) in his RFC determination and in his concomitant
> questions to the vocational expert, one searches the Record in vain to find evidence that
> that [sic.] those impairments would have caused the sort of workday interruptions the
> plaintiff's counsel posited to the vocational expert, or for that matter any sort of
> functional limitations. The lack of any such evidence, which the plaintiff bore the
> burden to produce, is fatal. *See, e.g.*, SSR 96-8p at 143 ("When there is no allegation
> of a physical or mental limitation or restriction of a specific functional capacity, and no
> information in the case record that there is such a limitation or restriction, the
> adjudicator must consider the individual to have no limitation or restriction with respect
> to that functional capacity.").

*Tolini*, 2006 U.S. Dist. LEXIS 71346, at *7, 2006 WL 2827660, at *2. Since the Plaintiff cannot show

stage, the Plaintiff does not appear to believe that these conditions would have changed the outcome at the administrative
level. Document No. 9 p. 17 ("At this point in the case, if the Defendant had in fact considered all of the impairments of
the Plaintiff, the case would be over."). For these reasons, the Plaintiff's argument is unavailing.

9

that her restrictive lung disease, periodic limb movement and cystitis resulted in functional limitations, her argument is unavailing.

In the instant case, the ALJ was aware of her duty to consider both severe and non-severe impairments in determining the Plaintiff's residual functional capacity. R. p. 16 ("Also, the combined effects of all impairments must be considered in determining the matter of severity even if each impairment alone is not severe."); 20 C.F.R. § 404.1545(a)(2). Indeed, she considered the effect that the Plaintiff's depression had on her ability to work even though it was deemed to be a non-severe impairment. R. pp. 17-18. It cannot be said that the ALJ failed to appreciate the nature of the required inquiry. If any specific impairments were ignored, it was only because the Plaintiff did not find them important enough to bring to the ALJ's attention.[7]

In her second argument, the Plaintiff contends that the ALJ failed to evaluate the effect that her sleeping difficulties had on her ability to engage in substantial gainful activity. Document No. 9 pp. 20-21. She appears to base this argument on the failure of the ALJ to consider her limb movement disorder. *Id.* This argument must be rejected for the same reasons that her first argument was rejected. Contrary to the Plaintiff's suggestions, the ALJ did not ignore her subjective allegations of sleeping difficulties. *Id.* Instead, the ALJ determined that the clinical and objective findings contained in the record were inconsistent with an individual experiencing the limitations alleged by the Plaintiff. R. p. 19. In her rather brief argument, the Plaintiff fails to identify any particular evidence that was ignored

---

[7]The Court does not mean to suggest that an ALJ is free to ignore medical documentation contained in the record solely because the claimant does not expressly mention it at the hearing. Nevertheless, given the specific reference by the Plaintiff's attorney to "three rather serious problems" at the hearing, the Plaintiff cannot now prevail on the ground that she had *more than three* serious problems. R. p. 300.

10

by the ALJ. As the Commissioner points out, the Plaintiff cannot obtain a remand on the basis of conjecture. Document No. 11 p. 11.

In her third and final argument, the Plaintiff argues that the hypothetical questions posed to Dr. Morris were defective. Document No. 9 p. 21. Like her second argument, this argument differs from her first argument only in form. She contends that the limitations resulting from her restrictive lung disease, periodic limb movement and cystitis were not included in the hypothetical questions, thereby making the questions defective. *Id.* The problem with this argument is that it begs the question. The Plaintiff makes no attempt to explain what *limitations* resulted from these *impairments*. It cannot be doubted that a hypothetical question must adequately convey to the vocational expert each limitation consistent with the claimant's residual functional capacity. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Otherwise, the vocational expert's testimony cannot constitute "substantial evidence" within the meaning of 42 U.S.C. § 405(g). *Id.* It must be remembered, however, that not every limitation *alleged* by the claimant must be included within the hypothetical question. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Instead, the ALJ must include only those limitations which he or she finds to be *credibly established* in the record. *Id.* In the instant case, the Plaintiff does not even mention a specific limitation resulting from her restrictive lung disease, periodic limb movement and cystitis that was not already accounted for in her residual functional capacity assessment. Document No. 9 p. 21. Consequently, her argument is wholly without merit.

The Plaintiff does not appear to deny the existence of evidence which contradicts her allegations of disabling impairments. In fact, she appears to concede that the record contains evidence which supports the ALJ's ultimate conclusion in this case. Document No. 9 p. 17 ("At this point in the case,

11

if the Defendant had in fact considered all of the impairments of the Plaintiff, the case would be over."). In any event, however, it is worth noting that the ALJ's determination is "supported by substantial evidence" for purposes of 42 U.S.C. § 405(g). In June, 2004, Rick DeSalvo, OTR, and Dan Martinazzi, PT, opined that the Plaintiff could perform work in the "sedentary to light work category[.]" R. p. 122. They recommended that the Plaintiff complete a reconditioning program prior to returning to a full-time work schedule. *Id.* The Plaintiff does not appear to take issue with this opinion, basing her argument exclusively on the ALJ's alleged failure to include all of her limitation-causing impairments in her residual functional capacity assessment. Document No. 9 pp. 20-21. The Court has no mandate to re-weigh the evidence of record in any case brought under the Social Security Act. This is especially true where, as here, the Plaintiff does not even argue that the ALJ's weighing of the evidence was erroneous.

The Court acknowledges that Dr. Stephen Matse, in an undated letter, opined that the Plaintiff was unable to "function at a job." R. p. 231. Under the governing law, however, it is axiomatic that "a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). Where an opinion is unsupported by clinical data or otherwise unsupported by the record, the ALJ is free to reject that opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Dr. Matse's letter clearly falls into this category. It cannot be doubted that the record contains evidence of the Plaintiff's medical conditions. Nevertheless, the law recognizes "a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). The Plaintiff points to no evidence of statutory disability to support Dr.

12

Matse's letter.[8] Therefore, the Court cannot conclude that the ALJ committed reversible error in choosing not to credit Dr. Matse's opinion.[9]

The Court emphasizes that it has no mandate to re-weigh the evidence of record, or to substitute its own findings for those of the Commissioner. So long as the Commissioner's decision is supported by substantial evidence, the Court cannot set that decision aside even if it would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). The deference owed to the Commissioner's findings of fact is present with special force where, as here, the Plaintiff purports to challenge those findings solely on the basis of obscure terms in treatment notes that were never expressly called to the ALJ's attention. If the governing law required the ALJ to "scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant[,]" perhaps a remand in this case would be warranted. *East*, 2006 U.S. App. LEXIS 24737, at *7, 2006 WL 2808242. There is no such requirement, however, and the Plaintiff cannot obtain a remand on the bases asserted in her brief.

While the ALJ had a duty to evaluate all of the relevant evidence, she did not have to reference every single treatment note contained in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir.

---

[8]As noted earlier, the Plaintiff does not make evidentiary-based arguments, opting instead to rely exclusively on the ALJ's supposed omission of three impairments in conducting the overall analysis. Document No. 9 p. 20.

[9]The Commissioner contends that Dr. Matse, in May, 2004, found the Plaintiff to be capable of light work. Document No. 11 p. 6. In an attending physician's statement dated May 24, 2004, it appears that Dr. Matse indicated that the Plaintiff could return to her own prior work at some point in the future. R. p. 115.

2001). The Court notes that the Plaintiff, throughout the entire administrative process, referred to her myotonic dystrophy, obstructive sleep apnea and narcolepsy without mentioning restrictive lung disease, periodic limb movement or cystitis. R. pp. 62-63. Neither the Plaintiff nor her attorney found it necessary to call the ALJ's attention to her restrictive lung disease, periodic limb movement or cystitis. R. pp. 287-301. Therefore, it was not unreasonable for the ALJ to ignore (or simply overlook) these alleged impairments. "[A]lthough the ALJ has a duty to fully explore the facts, the ALJ does not act as counsel for the claimant." *Musgrave v. Sullivan*, 966 F.2d 1371, 1377 (10th Cir. 1992).

Accordingly, the Court must deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 8) and grant the Motion for Summary Judgment filed by the Commissioner (Document No. 10).

An appropriate Order follows.

14

AND NOW, this 20th day of February, 2007, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 8) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

15